**FEDERAL DEPOSIT INSURANCE CORPORATION, a United States Corporation, Plaintiff,**

v.

**MARINE NATIONAL EXCHANGE BANK OF MILWAUKEE, Raymond L. Callen, John D. Hanrahan, Kenneth G. Pfister, Donald C. Pottinger, David R. Richards, Thomas J. Wegmann, and Francis M. Wilson, Defendants.**

**No. 79–C–339.**

United States District Court,
E. D. Wisconsin.

Oct. 6, 1980.

Robert J. Loots, Gibbs, Roper, Loots & Williams, Milwaukee, Wis., for plaintiff.

Paul V. Lucke, Reinhart, Boerner, Van Deuren, Norris & Rieselbach, Milwaukee, Wis., for Bank.

Dennis M. Grzezinski, Frisch, Dudek & Slattery, Milwaukee, Wis., for Richards.

John A. Keck, Milwaukee, Wis., for Hanrahan.

Dennis J. Christensen, Racine, Wis., for Pottinger.

Robert L. Hersh, Peregrine, Marcuvitz, Cameron & Peltin, Milwaukee, Wis., for Wilson.

## MEMORANDUM AND ORDER

WARREN, District Judge.

This is another in a seemingly never ending stream of cases resulting from the collapse of American City Bank. Unlike the majority of cases, this one is not a suit on a note. Rather the Federal Deposit Insurance Corporation (FDIC), in its corporate capacity, is seeking a declaration as to its rights to certain monies held by the Marine National Trust Company, N.A. (Marine) as trustee for the American Bankshares Corporation Employees Pension Plan (Pension Plan). The plaintiff requests that the Court declare that it is entitled to set off amounts held by Marine as trustee under the Pension Plan for the benefit of the individual defendants against obligations of those defendants owed to the FDIC. In addition, the plaintiff requests that the Court declare that it is entitled to receive all funds held by Marine that represent excess contributions to the Pension Plan.

Plaintiff has moved for summary judgment, and the defendant Marine, as well as the individual defendants, Hanrahan, Richards, and Pottinger have opposed the motion. The other defendants have not filed any response to the motion. Defendant Richards has also filed a motion for summary judgment.

On October 21, 1975, the Comptroller of the Currency declared American City Bank insolvent and the FDIC was appointed receiver. As receiver, the FDIC took possession of all the assets of the bank. Pursuant to an order of this Court, the FDIC then sold many of the assets of American City Bank to Marine. Included in the court–approved sale were assets held in trust by the trust department of American City Bank. (Exhibit B, Section 8 attached to Complaint). Under the provision of the sale, Marine replaced American City Bank as the fiduciary and trustee of the Pension Plan. The FDIC, in its corporate capacity, purchased the remaining assets of American City Bank not purchased by Marine.

When American City Bank closed, that portion of the Pension Plan which covered American City Bank employees, including the individual defendants, terminated pursuant to its own provisions. (Pension Plan Article XII, Sec. 12.01). As trustee of the Pension Plan, Marine has determined that as a result of actuarial errors, a surplus of approximately $200,000.00 remains in the terminated portion of the Pension Plan after accounting for all liabilities.

The FDIC, in its corporate capacity, has demanded that Marine pay over this surplus to it. Marine has refused to do so claiming the FDIC is not entitled to it. The plaintiff argues that it is entitled to the surplus because had the Pension Plan terminated prior to the demise of American City Bank, the Bank would have been entitled to the surplus under the provisions of the Pension Plan. Therefore, because the FDIC purchased all the remaining assets of the Bank, including the right to its surplus, it now asserts it is entitled to the surplus.

Section 12.5 of Article XII of the Pension Plan provides:

... upon termination of the Plan, and notwithstanding any other provision of the Plan, an Employer shall receive such amount, if any, as may be attributable to its contributions and as may remain after the satisfaction of all liabilities of the Plan to its Employees and arising out of any variations between actual requirements and expected actuarial requirements.

It is apparent under this provision that American City Bank would have had a contractual right to the surplus had it survived when the plan which covered American City Bank employees terminated pursuant to its own provisions. (Article XII § 12.1 of Pension Plan). The plaintiff contends that, under the terms of the contract of sale, it has acquired the right to the surplus and has demanded payment from Marine. Marine has refused payment. Plaintiff now moves for summary judgment on that issue.

■ Plaintiff argues that, when, under the National Banking Act, the FDIC was appointed receiver of the bank, it obtained all of its assets. 12 U.S.C. § 192 (1976). *Grindly v. First National Bank–Detroit*, 87 F.2d 110, 112 (6th Cir. 1936), *cert. denied, Grindly v. Schram*, 301 U.S. 696, 57 S.Ct. 923, 81 L.Ed. 1352 (1937). Because the bank had the right to receive the surplus before it became insolvent, the FDIC as the receiver had that right after insolvency. The FDIC as receiver also had the right to sell this asset pursuant to the liquidation of American City Bank. Under its contract with the FDIC in its corporate capacity, the receiver sold the assets of the bank not purchased by Marine. These assets included, but were not limited to, "all contracts, rights, claims, demands, choses of action whatsoever not purchased by the assuming bank ..." (Exhibit D, Section 1.1 of Kissel Affidavit). The assuming bank, Marine, purchased only those assets of the Pension Plan held by American City Bank as trustee not those assets held by the bank as grantor of the trust. The assets held by the grantor, therefore, were sold to the plaintiff. Because the defendant Marine has not opposed this portion of the plaintiff's motion

for summary judgment and because the Court concludes that pursuant to the sale of assets of American City Bank by the receiver and the terms of the Pension Plan, the plaintiff is entitled to the surplus funds, the Court finds plaintiff's motion for summary judgment with respect to the surplus funds must be and is hereby granted.

Plaintiff's motion for summary judgment with respect to its set off right against the funds held for the individual defendants raises more serious problems and issues. Under Section 10.03 of the Pension Plan, benefits of the plan are not subject to "anticipation, alienation, sole, transfer, assignment, pledge, incumbrance, charge of garnishment, execution, or levy of any kind...." Pension Plan Article X, § 10.03. This non–alienation provision, however, excepts from its application any indebtedness "owing to the Employer" *Id.* The term employer includes American Bankshares and American City Bank. Pension Plan Article II *Sec.* 2.1(c). Plaintiff argues that this provision permits it as successor or purchaser of American City Bank's right of set off, to set off the indebtedness of the individual defendants against the funds remaining in the Pension Plan which the individual defendants are entitled to.

The responding individual defendants and Marine have raised a number of defenses. Marine argues that the provision of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, et seq. apply to the Pension Plan and that under the anti–alienation provisions of section 206 of ERISA, 29 U.S.C. § 1056, the provisions of section 10.03 of the Pension Plan are unenforceable. In addition, Marine argues that the fiduciary provisions of ERISA prohibit the transfer of funds to the FDIC because it is a party in interest in the Pension Plan. Marine next argues that the public policy behind ERISA counsels against the Court granting the request of the plaintiff. Finally, Marine alleges that the FDIC is not entitled to set off even under the provisions of the Pension Plan. Defendant Richards joined by defendant Hanrahan advances three theories upon which the Court should deny plaintiff's mo-

tion. First, he asserts that the FDIC is not an employer under section 10.03 and, therefore, has no right to a set off. Second, he alleges that this action is a veiled attempt to execute on a judgment against the defendant by seizing the assets of the Pension Plan in violation of Wis.Stats. Sec. 815.18. Finally, he contends that attachment of his benefit under the Pension Plan is contrary to ERISA. Donald Pottinger has also raised a number of issues regarding the FDIC's right of set off.

Defendants argue that Section 206 of ERISA is applicable because the trust fund created pursuant to the Pension Plan is still in effect. Under Section 2 of ERISA, an employee benefit pension plan is:

... any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program–(A) provides retirement income to employees, or (B) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond.

Marine concedes that the portion of the Pension Plan pertaining to American City Bank terminated when the bank closed. Nevertheless, Marine argues that the remaining funds it holds in trust constitute an employee pension benefit plan under the act. In support of their position, Marine relies on two opinion letters from the Department of Labor.

In the first letter the plan involved had been terminated in 1974. At that time the assets were fully vested and frozen for payout to the participants upon their death, disability, retirement or termination. The Department of Labor took the position that because the trust fund continued to remain in effect, the plan had not terminated. Rather only future employer profit sharing contributions were terminated. According to the Department, because the trust continued and because the benefits are deferred until a future date, the plan remains in effect.

Similarly, in the second letter, the department held that a successor of a company that contractually agrees to pay retirement benefits to employees of the predecessor company when they retire must comply with ERISA. The department opined that the contractual obligation constituted an employee pension benefit plan.

Marine argues that the plan in this case is still in effect because the fund remains in trust and because the Internal Revenue Service still requires that the fund file an annual report. In addition, it urges that the Court give due deference to the Department of Labor's opinion letter because it is charged with enforcement and regulation of the act. See *Volkswagenwerk Aktiengesellschaft v. Federal Maritime Commission*, 390 U.S. 261, 262, 88 S.Ct. 929, 930, 19 L.Ed.2d 1090 (1968).

Plaintiff argues that the Pension Plan terminated on October 21, 1975 when the Comptroller declared the bank insolvent. The FDIC challenges the broad interpretation of the statute urged by Marine. It contends that for the trust fund to be an employee pension benefit plan under ERISA it must have as its purpose the providing of retirement income or the deferring of income. The purpose of the fund was to liquidate its assets according to the FDIC. It is on this basis that the FDIC also distinguishes the two opinion letters of the Department of Labor. In both those situations, the purposes of the trust fund were to provide retirement income after October 21, 1975.

The Court's research in this area has revealed only one case where a similar issue arose. In *Trippet v. Smith*, 592 F.2d 1112 (10th Cir. 1979) the plaintiff had filed an action alleging that the defendants had violated their fiduciary duties under ERISA because they had determined he had forfeited his right under a retirement plan. The defendants moved for summary judgment contending ERISA was not applicable because the retirement plan had terminated prior to the effective date of ERISA. In July of 1973, the company had terminated the plan. Subsequently the company filed

bankruptcy and proceeded to liquidate the trust. The final liquidation, however, was not completed until March of 1977. Plaintiff contended the plan was still in effect after the effective date of ERISA because the funds were still being maintained. The Tenth Circuit on appeal affirmed the district court granting summary judgment to the defendants. The Court held:

> that plaintiff's conclusion is neither warranted by the express wording of the statute nor supported by the legislative history of the Act. A *terminated plan the corpus of which is in the process of liquidation before the effective dates in ERISA is not a plan as contemplated in the Act.* 592 F.2d at 1113. (emphasis added).

 In this instance a similar finding is warranted. The pension plan, although in effect at the original passage of ERISA, was not in effect when the provision of ERISA became effective with respect to the alienation of benefits. On October 31, 1975, the plan was terminated. From then on it was in the process of liquidation. Therefore, the Court finds that the pension plan is not covered by the terms of section 206(d) of ERISA because it was not a plan as contemplated by ERISA at the time section 206(d) became effective.

Defendants next argue that certain other provisions of ERISA in effect in 1975 operate to preclude a right of set off. Marine contends that section 403(c)(1) and 406(a)(1)(D) bar a set off and Richards argues that section 404(a)(1)(A) has the same effect. Section 403(c)(1) provides in part:

> [T]he assets of a plan *shall never inure to the benefit of any employer* and shall be held for the exclusive purpose of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan. (emphasis added).

Marine argues that if the FDIC is allowed to set off the indebtedness of the individual defendants, assets of the pension plan will be inuring to the benefit of the employer contrary to the dictates of section 403(c)(1) of ERISA.

In response, the FDIC contends that it is not the employer and therefore section 403(c)(1) does not apply to its right of set off. Furthermore, the FDIC argues that the cited language does not apply to a set off situation. Rather it suggests that this section only amplifies and qualifies the general restrictions on fiduciaries. Finally, FDIC argues that if construed as suggested by Marine, the Court would have to assume that Congress had intentionally meant to provide two anti–alienation provisions in the Act. The FDIC implies that such a conclusion is unwarranted.

█ When construing a statute, the Court must first consider the statutory language. If that language is clear and unambiguous on its face, the Court need not look behind the statute to ascertain the intent of the legislature. If it is ambiguous, however, a consideration of the legislative history is necessary. In this instance, the language is unambiguous. The plain language of the statute states that no assets of a plan should ever benefit an employer. *Cf.* Canon, Qualified Retirement Plans § 7.5 (1977). Although sections 401–411 of ERISA deal with the duties of fiduciaries in general, section 403 is entitled, *Establishment of Trust* and the provisions are broader than a mere classification of the fiduciaries duties. The Court notes that no other court has interpreted or given effect to this provision. This section, however, has been raised by plaintiffs in cases where they seek to prevent the set off of Workmen's Compensation Benefits against pension plans. *See Stong v. Bucyrus–Erie Company*, 472 F.Supp. 1089 (E.D.Wis.1979) *reh. den.* 481 F.Supp. 760 (E.D.Wis.1979); *Spitzler v. New York Post Corporation*, 476 F.Supp. 386, 391 (S.D.N.Y.1979); *Utility Workers Union v. Consumer Power Co.*, 453 F.Supp. 447 (E.D.Mich.1978). In these cases, however, the courts decided the issue on other grounds.

Although the FDIC is not the employer, its rights are derived from the employer's right under the Pension Plan. Clearly the ability to set off a debt owing to the employer against the pension plan assets would result in the inuring of pension plan assets to the benefit of the employer. As this Court interprets the prohibition in section 403(c)(1), the employee's right of set off in 10.5 of the pension plan is contrary to the provision of ERISA.

Because the FDIC's right of set off arose from the employer's invalid right of set off, its right is equally invalid. Therefore, the Court finds that the plaintiff is not entitled to summary judgment. In fact, because the Court's decision resolves the issues before it and upon the motion of defendant Richards, the Court finds that the defendants are entitled to summary judgment on this portion of the complaint.

The plaintiff is hereby ordered to submit a proposed judgment for approval by the Court.

SO ORDERED.